IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KATELYN HANKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | File No. |
| OTB ACQUISITION LLC and ) | |
| BELTLINE/AIRPORT FREEWAY, LTD., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, KATELYN HANKS, by and through the undersigned counsel, and files this, his Complaint against Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, KATELYN HANKS (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Dallas, Texas (Dallas County).

3. Plaintiff is disabled as defined by the ADA.

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in

performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5. Plaintiff uses a wheelchair for mobility purposes.

6. Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes").

7. Defendant, OTB ACQUISITION LLC (hereinafter "OTB ACQUISITION LLC"), is a Texas limited liability company that transacts business in the State of Texas and within this judicial district.

8. Defendant, OTB ACQUISITION LLC, may be properly served with process via its registered agent for service, to wit: CT Corporation System, Registered Agent, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

9. Defendant, BELTLINE/AIRPORT FREEWAY, LTD. (hereinafter "BELTLINE/AIRPORT FREEWAY, LTD."), is a Texas limited corporation that transacts business in the State of Texas and within this judicial district.

10. Defendant, BELTLINE/AIRPORT FREEWAY, LTD., may be properly served with process via its registered agent for service, to wit: Kim S. Fredenburg, Registered Agent, 3102 Maple Avenue, Suite 500, Dallas, TX 75201.

## FACTUAL ALLEGATIONS

11. On or about July 7, 2019 Plaintiff was a customer at "On the Border Mexican Grill & Cantina," a business located at 2400 N. Beltline Road, Irving, TX 75062, referenced herein as the "On the Border."

12. OTB ACQUISITION LLC is the lessee or sub-lessee of the real property and improvements that are the subject of this action.

13. BELTLINE/AIRPORT FREEWAY, LTD. is the owner or co-owner of the real property and improvements that On the Border is situated upon and that is the subject of this action, referenced herein as the "Property."

14. Plaintiff lives 18 miles from On the Border and the Property.

15. Plaintiff's access to the business(es) located at 2400 N. Beltline Road, Irving, TX 75062, Dallas County Property Appraiser's account number 325376500101D0000 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., are compelled to remove the physical barriers to access and correct the ADA violations that exist at On the Border and the Property, including those set forth in this Complaint.

16. Plaintiff has visited On the Border and the Property at least once before as a customer and advocate for the disabled. Plaintiff intends on revisiting On the Border and the Property within six months or sooner, as soon as the barriers to access detailed in this Complaint are removed and On the Border and the Property is accessible again. The purpose of the revisit is to be a regular customer, to determine if and when On the Border and the Property is made accessible and

to maintain standing for this lawsuit for Advocacy Purposes.

17. Plaintiff intends on revisiting On the Border and the Property to purchase food and/or services as a regular customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18. Plaintiff travelled to On the Border and the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access at On the Border and the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at On the Border and the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

19. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

20. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24. On the Border is a public accommodation and service establishment.

25. The Property is a public accommodation and service establishment.

26. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

27. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

28. On the Border must be, but is not, in compliance with the ADA and ADAAG.

29. The Property must be, but is not, in compliance with the ADA and ADAAG.

30. Plaintiff has attempted to, and has to the extent possible, accessed On the Border and the Property in her capacity as a customer of On the Border and the Property and as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at On the Border and the Property that preclude and/or limit her access to On the Border and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31. Plaintiff intends to visit On the Border and the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at On the Border and the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at On the Border and the Property that preclude and/or limit her access to On the Border and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including

those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32. Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of On the Border and the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33. Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., are compelled to remove all physical barriers that exist at the On the Border and the Property, including those specifically set forth herein, and make On the Border and the Property accessible to and usable by Plaintiff and other persons with disabilities.

34. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to On the Border and the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of On the Border and the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i) There is one accessible parking space that is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(ii) The access aisles to all of the accessible parking spaces are not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the

        2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iii)    The accessible curb ramps are improperly protruding into the access aisles of the accessible parking spaces in violation of section 406.5 of the 2010 ADAAG Standards. This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(iv)    Both accessible ramps have side flares with a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(v)    For both accessible ramps, there is an excessive vertical rise exceeding ½ inch at the top of the accessible ramps in violation of Section 303.2 and 405.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

(vi)    There is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with section 902.2 of the 2010 ADAAG standards, this section requires appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards, positioned for a forward approach. A failure to have the appropriate number of accessible tables is a violation of section 226.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to enjoy all areas of the restaurant that are available to non-disabled patrons.

(vii)    The bar is lacking any portion of the counter that has a maximum height of 34 (thirty-four) inches from the finished floor in violation of Section 902.3 of the 2010 ADAAG standards, all portions of the bar exceed 34 (thirty-four) inches in height

   from the finished floor. This violation made it difficult for Plaintiff to enjoy the unique eating experience at the bar.

(viii) There is not at least 5% (five percent) of the bar area dining surfaces provided for consumption of food or drink which complies with Section 902.3 requiring the maximum height of the dining surface to be maximum 34 (thirty-four) inches above the finished floor. A failure to have the appropriate number of accessible tables is a violation of section 226.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to enjoy all areas of the restaurant that are available to non-disabled patrons.

(ix) Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

RESTROOMS

(i) The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

(ii) The accessible toilet stall door is not self-closing and violates Section 604.8.2.1 of the 2010 ADAAG standards. This made it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(iii) The accessible toilet stall door swings into the clear floor space required by the stall and violates Section 604.8.1.2 of the 2010 ADAAG standards. This made it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

 (iv) The height of coat hook located in accessible restroom stall is above 48 (forty-eight) inches from the finished floor in violation of Section 308.2.1 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

 (v) Due to a policy of storing a trashcan near the restroom door hardware, the door exiting the restroom lacks a proper minimum maneuvering clearance, due to the proximity of the door hardware to the trashcan, in violation of Section 404.2.4 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities, as the Plaintiff's feet in a wheelchair protrude out and having the trashcan adjacent to the door hardware makes it impossible for Plaintiff's hands to reach the door hardware as her feet will block that access when it hits the trashcan.

 (vi) The paper towel dispenser in the restroom is located outside the prescribed vertical reach ranges set forth in Section 308.2.1 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

35. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at On the Border and the Property.

36. Plaintiff requires an inspection of On the Border and the Property in order to determine all of the discriminatory conditions present at On the Border and the Property in violation of the ADA.

37. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.   All of the violations alleged herein are readily achievable to modify to bring On the Border and the Property into compliance with the ADA.

39.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at On the Border and the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at On the Border and the Property is readily achievable because Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., have the financial resources to make the necessary modifications.

41.   Upon information and good faith belief, On the Border and the Property have been altered since 2010.

42.   In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.   Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., are required to remove the physical barriers, dangerous conditions and ADA violations that exist at On the Border and the Property, including those alleged herein.

44.   Plaintiff's requested relief serves the public interest.

45.   The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD.

46.   Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of

litigation from Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., pursuant to 42 U.S.C. §§ 12188 and 12205.

47. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., to modify On the Border and the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, OTB ACQUISITION LLC, in violation of the ADA and ADAAG;

(b) That the Court find Defendant, BELTLINE/AIRPORT FREEWAY, LTD., in violation of the ADA and ADAAG

(c) That the Court issue a permanent injunction enjoining Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., from continuing their discriminatory practices;

(d) That the Court issue an Order requiring Defendants, OTB ACQUISITION LLC and BELTLINE/AIRPORT FREEWAY, LTD., to (i) remove the physical barriers to access and (ii) alter On the Border and the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(e) That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

  (f)  That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: August 13, 2019.      Respectfully submitted,

              THE SCHAPIRO LAW GROUP, P.L.

              /s/  Douglas S. Schapiro
              Douglas S. Schapiro, Esq.
              *Attorney-in-Charge for Plaintiff*
              Northern District of Texas ID No. 54538FL
              The Schapiro Law Group, P.L.
              7301-A W. Palmetto Park Rd., Suite 100A
              Boca Raton, FL 33433
              Tel: (561) 807-7388
              Email: schapiro@schapirolawgroup.com

              Law Offices of
              LIPPE & ASSOCIATES

              /s/  Emil Lippe, Jr.
              Emil Lippe, Jr., Esq.
              State Bar No. 12398300
              Lippe & Associates
              12222 Merit Drive, Suite 1200
              Dallas, TX 75251
              Tel: (214) 855-1850
              Fax: (214) 720-6074
              emil@texaslaw.com

              ATTORNEYS FOR PLAINTIFF
              KATELYN HANKS